IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

———————————

IRENE ARCHER,

     Plaintiff,

          vs.                         No. 1:23-CV-00655-KG-SCY

JESSICA VIGIL-RICHARDS,
DANIEL MENDOZA,
HOBERT SHARPTON,
WEXFORD HEALTH SOURCES, INC., and the
NEW MEXICO CORRECTIONS DEPARTMENT

     Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on a Motion for Summary Judgment, (**Doc. 79**),

filed on January 24, 2025, by Wexford Health Sources, Inc, and Doctor Hobert Sharpton

("Defendants").  Plaintiff Irene Archer filed a Response, (**Doc. 84**), on February 21, 2025, and

Defendants their Reply, (**Doc. 86**), on March 07, 2025.  Having considered the parties' briefing

and applicable case law, the Court **GRANTS** Defendants' Motion for Summary Judgment, (**Doc.

79**).

## BACKGROUND[1]

This case arises out of the year-long incarceration of Ms. Archer at the Western New

Mexico Correctional Facility ("WNMCF").  Prior to her incarceration at WNMCF, Ms. Archer

underwent several surgeries—including, neck surgery, a hysterectomy, a breast reduction, thumb

---

[1]The Court takes the background facts from the parties' briefs that are supported by evidence in the record.  The background facts are either undisputed, or, where genuinely disputed, are viewed in the light most favorable to Ms. Archer, the party opposing the grant of summary judgment.  *See In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 964 (10th Cir. 2022).  The facts included here are material and are not in dispute unless otherwise noted.

surgery, and elbow surgery.  (**Doc. 79-2**) **at 3–4**.  Following her neck surgery, Ms. Archer was

paralyzed for five months.  *Id.* **at 5**.

In addition to undergoing several surgeries, Ms. Archer had numerous medical

conditions, including spinal stenosis, osteopenia, lymphedema, and scoliosis.  *Id.* **at 2**; (**Doc. 79-**

**5**) **at 3**.  She also experienced incontinence, immobility, leg spasms, swelling in her legs, and

chronic pain in her shoulder, neck, and back.  *Id.* **at 2, 9, 10, 20**.  For these conditions, Ms.

Archer took the following medications: oxycodone, duloxetine, lasix, and gabapentin.  *Id*. **at 7,**

**33**.

On August 14, 2020, a New Mexico district judge sentenced Ms. Archer to 364 days at

the Valencia County Detention Center.  On November 4, 2020, the district judge ordered jail

officials to transfer Ms. Archer from the Valencia County Detention Center to WNMCF for

safekeeping due to her "existing medical conditions" which required "specialized care."  (**Doc.**

**84-3**)

When Ms. Archer arrived at WNMCF, she was using a walker and fell.  (**Doc. 79-2**) **at**

**19–20**.  Defendant Sharpton, the facility's medical director, saw Ms. Archer in the Long-Term

Care Unit ("LTCU"), also known as the infirmary unit, shortly after this fall to conduct an intake

evaluation.  *Id.* **at 11–12, 20**; (**Doc. 84-7**) **at 3**.

During the intake process, Defendant Sharpton acknowledged Ms. Archer's medical

conditions and the court order requiring Ms. Archer to receive specialized care.  *Id.* **at 11–12**;

(**Doc. 84-7**) **at 3**.  Additionally, Defendant Sharpton scheduled appointments for Ms. Archer to

address her lymphedema and to consult her assigned spine surgeon at the University of New

Mexico's Hospital.  *Id.* **at 11**.  Defendant Sharpton also prescribed her various medications

throughout her time at WNMCF, including oxybutynin for her urinary incontinence; prednisone

for pain and arthritic conditions; pregabalin for nerve damage, low back pain, and muscle spasms; duloxetine, for depression and peripheral neuropathy. *Id.* at 14; (Doc. 84-7) at 3; (Doc. 84-5) at 7–8. Around the same time as her intake, Defendant Sharpton diagnosed Ms. Archer with diabetes and prescribed appropriate medication. *Id.* at 13–14; (Doc. 79-5) at 3.

Around December of 2020, Ms. Archer requested a new walker after hers broke during a fall. *Id.* at 30. She was provided a replacement walker and, later, a wheelchair. *Id.* at 12, 30. Defendant Sharpton also issued her a knee-brace. *Id.* at 30.

In May of 2021, Ms. Sharpton fell twice within a 24-hour period. (Doc. 84-2) at 5. After these falls, jail officials brought her to the LTCU, where Defendant Sharpton kept her for a few days. (Doc. 84-5) at 10. During this time, nurses and other staff assisted her with daily activities. (Doc. 84-7) at 2. Eventually, Ms. Archer became stable on her feet and able to perform her daily activities with less assistance from nurses and other staff. *Id.* Ms. Archer also reported that she felt better about her leg. *Id.* Defendant Sharpton later discharged her from the LTCU. *Id.*

On June 23, 2021, Ms. Archer visited the University of New Mexico for an appointment with her surgeon. (Doc. 79-2) at 24. At this appointment, Ms. Archer's surgeon x-rayed and evaluated her spine. *Id.* at 19.

On September 7, 2021, Ms. Archer fell again. *Id.* at 26; (Doc. 84-7) at 1. Correctional Officer Bahe brought her to the LTCU and informed medical staff that she "fell all the time but refused to be checked by medical." *Id.* Defendant Sharpton admitted her to the LTCU, where she remained for the rest of her incarceration at WNMCF. *Id.* Defendant Sharpton also prescribed Ms. Archer Tylenol for pain control. *Id.*

Following her incarceration at WNMCF, Ms. Archer filed the present action against

Defendants, alleging violations of the Eighth Amendment and negligent medical care. **(Doc. 25)**.

The pending motion seeks summary judgment in Defendants' favor on these claims. **(Doc. 79)**.

## RULE 56 SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed

fact is 'material' if it might affect the outcome of the suit under the governing law, and the

dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Est. of Beauford v. Mesa Cnty.,* 35 F.4th 1248, 1261 (10th Cir. 2022) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The movant bears the initial burden of demonstrating the absence of a genuine issue of

material fact, but once the moving party has done so, the burden shifts to the non-movant to

establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197

(10th Cir. 2022). "The moving party may carry its initial burden either by producing affirmative

evidence negating an essential element of the nonmoving party's claim, or by showing that the

nonmoving party does not have enough evidence to carry its burden of persuasion at trial."

*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (citation omitted).

In opposing summary judgment, the non-movant cannot rest on mere allegations "but

must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*,

590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Jenkins v. Wood,* 81 F.3d 988, 990 (10th

Cir.1996)). "The summary judgment standard requires [the Court] to construe the facts in the

light most favorable to the nonmovant and to draw all reasonable inferences in its favor."

*Beauford*, 35 F.4th at 1261 (citing *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021)).

The Court's function at this stage "is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.  Further, the Court need not accept allegations contradicted by objective evidence. *Beauford*, 35 F.4th at 1261 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## DISCUSSION

In the pending Motion, Defendants seek summary judgment on all Ms. Archer's claims against them.  The Court now considers whether summary judgment is warranted on each of these claims.

### I.    Ms. Archer's Eighth Amendment Deliberate Indifference Claim:

An Eighth Amendment deliberate indifference claim has both an objective and subjective component.  *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)).  The objective component requires the alleged deprivation to be "objectively, 'sufficiently serious.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson*, 501 U.S. at 298).  "[A] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Hunt v. Uphoff*, 199 F. 3d 1220, 1224 (10th Cir. 1999).

The subjective component requires a showing that the prison official acted with a "sufficiently culpable state of mind," *i.e.*, knew of and disregarded an "excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 834, 837.  In the context of medical care, a plaintiff may demonstrate deliberate indifference by showing that a prison or medical official (1) failed to treat a serious medical condition properly, or (2) acted as a gatekeeper who prevented an inmate from

receiving treatment or denied access to someone capable of evaluating the inmate's need for treatment. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

Defendants move for summary judgment on this Eighth Amendment claim, arguing Ms. Archer cannot establish that Defendant Sharpton acted with the culpable state of mind necessary to prove a claim of deliberate indifference. (**Doc. 86) at 5**. They contend the undisputed facts establish that Ms. Archer received "ongoing, continuous medical care" throughout her time at WNMCF. *Id.*

Paraphrasing Ms. Archer's argument, she asserts that Dr. Sharpton's failure to place her in the LTCU before September of 2021 despite knowing she had serious medical needs and that the LTCU was an appropriate place for her care, constitutes deliberate indifference to her serious medical needs. (**Doc. 84) at 13–14**.

The Court agrees with Defendants. During her time at WNMCF, Ms. Archer had several medical conditions, including spinal stenosis, osteopenia, lymphedema, and severe scoliosis. *Id.* **at 2**; (**Doc. 79-5) at 3**. She also experienced incontinence immobility, leg spasms, swelling in her lower extremities, and chronic pain in her shoulder, neck, and back. *Id.* **at 2, 9, 10, 20**. The undisputed facts show that Defendant Sharpton and Wexford medical staff regularly and responsively treated her for these conditions.

Ms. Archer was seen by Doctor Sharpton for her medical conditions, particularly her chronic pain, regularly. (**Doc. 84-5) at 10**. He diagnosed her with diabetes and provided appropriate treatment. (**Doc. 79-2) at 13**; (**Doc. 79-5) at 3**. He also scheduled an appointment for her with her spine surgeon at the University of New Mexico. (**Doc. 79-2) at 19, 24**. Ms. Archer had this appointment in June of 2021. *Id.* **at 24**. During this appointment, her surgeon x-rayed and evaluated her spine. *Id.* **at 19**. Dr. Sharpton also prescribed her several medications

for her medical conditions, including oxybutynin, prednisone, pregabalin, duloxetine, and ibuprofen. *Id.* at 14; **(Doc. 84-7) at 3**; **(Doc. 84-5) at 7–8**. Ms. Archer also had a walker, wheelchair, and a knee-brace for her immobility. *Id.* **at 12, 30**.

With respect to her falls, Defendant Sharpton admitted Ms. Archer into the LTCU in May of 2021 after she fell twice in a 24-hour period. **(Doc. 84-2) at 5, 10**. During Ms. Archer's stay at the LTCU, she received assistance with her daily activities, such as getting out of bed and using the bathroom. *Id.* A nurse later reported that Ms. Archer had improved, was stable on her feet, and could ambulate independently with her walker and wheelchair, with less assistance from medical staff. **(Doc. 84-7) at 2**. She was then discharged from the LTCU. *Id.* After another fall in September of 2021, Dr. Sharpton readmitted her to the LTCU, where she remained for the rest of her incarceration at WNMCF. **(Doc. 79-2) at 26**; **(Doc. 84-7) at 1**.

The undisputed facts outlined above establish that Defendant Sharpton and Wexford medical staff provided Ms. Archer with regular and responsive care for her medical needs. As a result, she cannot show that Defendants Sharpton or Wexford were deliberately indifferent to her serious medical needs.

Moreover, any claim that Defendant Sharpton could have admitted Ms. Archer to the LTCU sooner, for longer periods, or on a permanent basis does not render his care unconstitutional. Such claims amount to a difference of opinion regarding treatment. *See Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980) ("[D]ifference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment or diagnosis . . . does not support a claim of cruel and unusual punishment."); *Estelle v. Gamble,* 429 U.S. 97, 107 (1976) (explaining that matters for medical judgment do not give rise to claim of cruel and unusual punishment).

The same is true of any claim that Ms. Archer should have been provided different pain medication. *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (noting that types of medication prescribed are generally matters of medical judgment and prisoner's "belief" that he needs "additional medication, other than that prescribed" is simply "insufficient to establish a constitutional violation"); *Pumphrey v. Wood*, 2015 WL 1393233, at *9 (D. Utah), a*ff'd*, 628 F. Appx. 615 (10th Cir. 2016) ("Generally, neither the fact that a prisoner continues to experience pain despite treatment nor the fact that jail physicians refuse to provide him with the specific pain medications he requests is sufficient to state a constitutional claim."); *Todd v. Bigelow*, 497 F. Appx. 839, 842 (10th Cir. 2012) ("[A] difference of opinion with the medical staff as to the optimal pain-management regimen does not amount to deliberate indifference.").

Because Ms. Archer cannot show that Defendant Sharpton or any other Wexford medical staff were deliberately indifferent to her medical needs, Defendants are entitled to summary judgment on her Eighth Amendment deliberate indifference claim.

## II.    Ms. Archer's Negligent Provision of Medical Care Claim:

Given the Court's prior order granting summary judgment in favor of the individual corrections officers and the New Mexico Corrections Department, and the above ruling on Ms. Archer's remaining Eighth Amendment claim, the Court has resolved all of Ms. Archer's federal claims. Her only remaining claim—negligent provision of medical care—is based in state law. Under Tenth Circuit precedent, when federal claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction over state law claims and allow plaintiff to pursue them in state court. *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir.1995); *see also* 28 U.S.C. § 1367(c)(3) (stating that when all federal claims are dismissed, district court may decline to exercise jurisdiction over remaining state claims). Additionally, there is a substantial benefit in

8

having pure state law matters decided by a state court.  For these reasons, the Court declines to

exercise supplemental jurisdiction over Ms. Archer's remaining claim under 28 U.S.C. § 1367.

Ms. Archer's negligent provision of medical care claim is therefore **DISMISSED without**

**prejudice** for lack of subject matter jurisdiction.  *Brereton v. Bountiful City Corp.*, 434 F.3d

1213, 1216–19 (10th Cir. 2006) (explaining that a dismissal for lack of subject matter

jurisdiction should always be without prejudice).

<u>**CONCLUSION**</u>

In sum, Ms. Archer cannot show that Defendants were deliberately indifferent to her

medical needs.  Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment, (**Doc.**

**79**), as to Ms. Archer's Eighth Amendment deliberate indifference claim.  Further, the Court

declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Ms. Archer's

remaining state law claim, and diversity jurisdiction under 28 U.S.C. § 1332 is not adequately

alleged.  Accordingly, the Court **DISMISSES** Ms. Archer's negligent provision of medical care

claim against Defendants **without prejudice** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

/s/_____
KENNETH J. GONZALES[2]
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.